Good morning, your honors. Doug Keller on behalf of Mr. Aldana and Mr. Suarez. The government convicted both Mr. Aldana and Mr. Suarez of attempting to enter the United States at a non-designated place. Whether there was sufficient evidence to sustain... Non-designated port of entry. Well, the statute says non-designated place. And then the regulation, right, just says define certain points or ports of entry. And that sort of, I think, gets sort of the crux of the case is whether there was sufficient evidence to convict them turns on the meaning of this regulation and what, in fact, immigration officials have designated. Under my reading of the regulation, and I think just what the regulation says, is that the regulation, generally speaking, designates geographic areas for entry. So, for example, the regulation says that it designates, quote, Otay Mesa, California, for entry.  And I think that's plain language reading of the statute supported by the fact that elsewhere in the regulation, it talks about port facilities. So the regulators knew how to use the phrase port facilities when they wanted to designate particular port facilities. In those cases, such as in Boston, I think is cited in your briefs, there's more than one port of entry. And so they're designating the names of the several different ports of entries. Is there more than one in Otay Mesa? There's not, but there is. And what is the one in Otay Mesa called? On the website, they refer to it as Otay Mesa Port of Entry. That's my understanding of the name of the port. Okay. So when the regulation says the following places are hereby designated as ports of entry and then says Otay Mesa, you think that we shouldn't infer that it's referring to Otay Mesa Ports of Entry, Port of Entry? No. In fact, I'll point you to sort of the same part of the regulation also designates Calexico, California as a port of entry. But there's actually two ports of entry in Calexico. There's not one. But there's no parenthetical talking about the specific ports of entry. So the government tries to read the parenthetical when it designates particular ports as only places where they're designating multiple ports within a certain geographic region. But Calexico is contrary to that. So Calexico has two ports of entries, two different facilities that are designated as ports of entries? Well, they're two different port facilities. And these are like two different parts of Calexico? There's two different buildings in different parts of Calexico? Yes. I think one of them technically is called Calexico East. One of them is technically called Calexico West. But they're, I think, 10 or 15 miles apart from each other. They're not part of the same facility by any means. And they're called, what, Calexico Port of Entry? East. What are they called on the website? I believe on the website they're called Calexico East and Calexico West. But they're, like I said, they're 10 miles apart. They're not part of the same thing. And there's other examples of that. So I believe Richmond, Virginia has multiple ports of entry. I don't, unfortunately, know the names of them. But just going on their website, there's multiple ports there. But you look in the regulation, it just designates Richmond, Virginia. But then on the flip side, if you look at, for example, San Francisco. So are you saying, is your theory that wherever the regulation doesn't say Calexico Port of Entry, it just says Calexico, then the entire Calexico, is that a county or a city? I don't know, actually. I was thinking this morning. I don't know. But whatever the jurisdictional boundary is the port of entry. That's how we should read that. Yes. Is that your view? Okay. Yes. And the other example I'll point to is San Francisco. So San Francisco is designated. But then it also has a parenthetical, which has a number of port facilities. Nearly all or perhaps all of those port facilities are actually outside the geographic area of San Francisco. So, for instance, they designate Oakland, California as a place for entry. And so I think if they hadn't specifically listed Oakland, California, if you just read San Francisco, California, you wouldn't think that Oakland, of course, is part of San Francisco. So I think most of the parentheticals are actually port facilities that are outside the geographic area of the city. And I think that's consistent with nearly all of the regulation. And so I think at the end of the day, I think very simple reading of the regulation is when they say Calexico, California, when they say Otay Mesa, California, that's what they mean. Well, but you just said you weren't sure what they meant when they said Calexico under your reading. I mean, what is Calexico? Well, I guess I just haven't looked it up. But I don't know if it's a city or it's a neighborhood, but it's certainly like a definable area. And what's Otay Mesa? I mean, it's an area. It's sort of a geographical description. But is it a political subdivision? Essentially, it's a giant subdivision of San Diego. But there are legal boundaries to Otay Mesa. There's legal boundaries to all these different places. And the government certainly could prove that if that's the route they wanted to go at trial. The heading for this regulation is field offices. That suggests to me that we're talking about facilities rather than geographical areas. How do you respond to that? Well, I don't know how much you can make of the title, really. I mean, I think, at least for me, I can't get around the fact that they could have very easily said Otay Mesa port facility. It wouldn't have been difficult to do that, but they chose not to. And I think there is like a practical reason why they didn't want to do that, which is that many of these port facilities are not literally at the border. You have to cross into the United States, sometimes hundreds of feet, sometimes miles, to get to the actual port facility. So if the government just designated the actual physical port facilities, every single legal permanent resident, every single visa holder who crossed into the United States to get to these port facilities would actually, under the government's view, be violating 1325A1 because they would cross the United States at a non-designated place because they're not crossing into the United States at a port facility. Under my reading, because what I think they're trying to do is designate general or geographic areas, because people who cross into the United States at these geographic areas have not committed 1325A1. And so with respect to this case, under that theory, your two guys were in that area, and that should therefore keep them from being liable under that statute. Or the government hasn't proven the opposite, I guess is the way I would put it. The government just didn't prove where exactly they entered, other than that we know from the record that they didn't enter at the physical port facility. I didn't mean any disrespect when I said your two guys. I understand your point, Your Honor. It's been a long week, I'm sure. If the Court has no further questions, I'm happy to reserve the rest of my time. Okay, thank you. Thank you. May it please the Court, Daniel Zip on behalf of the United States. Your Honor, before even getting to the sort of regulatory argument, the defendants in this case were charged with attempted entry into the United States. The only elements for that crime were that they had the specific intent to enter at a place other than as designated by immigration officials, and that they took a substantial step towards achieving that goal. In this case, regardless of how the fence was designated under the regulations, the evidence was overwhelming that these specific defendants, when they walked up to that fence and climbed over at night three miles east of the port of entry facility, that they had the specific intent to enter at a place that wasn't a designated port of entry. But that's his argument. He's saying, well, that's Otay Mesa. That may be a silly argument, but that's his argument. In fact, they were intending to enter into Otay Mesa. They may not have known it by name, and according to opposing counsel, Otay Mesa is the designated facility. So their intent was to enter via the designated facility or the designated place. I think the difference with the attempt, the extra wrinkle that that adds, is that nothing about this fence area gave any appearance that it was a port of entry. Does that matter? Why does that matter? If it was designated, according to opposing counsel, that was designated as a place by immigration officers, so it was a designated place. Yes, but the question is whether the defendants, in their heads, had the specific intent to cross at a place that was not a designated port of entry. So the evidence, there is nothing about that fence that advertised in any way that it was a port of entry. So that element, proving that they had the intent to come in, was proven by overwhelming evidence. The question of whether it was actually designated sort of secretly by this regulation doesn't go— This begins to sound like those hypotheticals that drive me crazy in criminal law. Can you attempt to do something that's impossible to do? I mean, you're saying they didn't have an intent to enter a non-port of entry when, in fact, they're doing it under his theory. I mean, his theory is where they were coming in was designated as Otay Mesa. And you're saying, well, they're attempting to do something other than what they're allowed to do when they're attempting to do precisely what he says they're allowed to do. So I don't get it. Can you move off of the attempt issue, because that's getting a little too metaphysical for me as well, and address whether, in fact, the regulation is best read as designating various geographical areas as opposed to specific facilities. Yes, Your Honor. I think both parties here are making sort of a plain reading argument. We're just focusing on two different words in the statute. Defense is saying that we have to look at Otay Mesa and say the plain meaning of that word is Otay Mesa, the city. And we're saying the word port of entry has to have a plain meaning, which means a place where people come into the United States. So one of those two plain meanings has to give. By place, do you mean a specific building or facility? Yes, where physical entry into the United States is possible. At Otay, California. Yes. So you're saying that we should read the regulation with the understanding that each of those listed geographical names is meant to refer to a specific facility. Is that your position? That's our position, yes, Your Honor. And I think to read it otherwise as designating the entire city or whatever the geographic region, sometimes it's a neighborhood like Otay Mesa. Calexico, I think, is a specific city. To read it that way would defeat the purpose of the regulation, which in the first sentence says it's designating ports of entry for entry by aliens and by vessel or other land transportations. To interpret that in a way that encompasses large swaths of border wall that were built specifically to prevent entry by vessel or other transportation is not logical, and it would defeat the purpose of the regulation itself to interpret it that way. So, again, this court, just to briefly go back on the attempt to answer your question, Your Honor, this court has held that even a defendant who doesn't legally cross the border in the official restraint doctrine, and, in fact, in this case, Mr. Aldana never actually legally entered the United States. He was on video camera the entire time. Even a defendant that doesn't cross the border can still be guilty of attempting to enter the United States as long as he has the specific intent to do it. So, to here, even if this is legally a designated port of entry three miles east next to a fence, as long as this defendant had the specific intent to cross at a place that wasn't a designated port of entry, that's enough under this court's system. So you're looking for a ruling from us saying even if Otay Mesa, the entire geographical area, is a designated place for entry, in this case, the alien didn't realize that and so didn't have the intent to enter at a place of entry. Is that the sort of ruling you're looking for? Well, I'm not looking for a specific ruling. I'm saying that that evidence in this case was enough without even reaching the question of the regulation. But your argument, let's say I'm a habitual burglar, but I'm kind of mixed up a little bit, and I break into my own home thinking I'm burglarizing somebody else's. Would you call that attempted burglary when, in fact, it's my own home and it can't possibly be a burglary because it's my own home? I mean, that's what your argument is. That's nuts. I mean, that's comparable to what the case law is in the official restraint doctrine, that you can violate, you can have the intent to commit a crime that you don't even actually do because you don't even cross the border. So I think that's, under this court's case law, in this context of border crossing, that is an obvious. I'm much more comfortable with the argument of saying, you know, the intent and the meaning of this regulation is crystal clear. It means port of entry. Everybody go home now. We would be happy with that outcome as well, Your Honor. Especially the go home now part. With that, if there's no other questions. Thank you. I have to say I admire the San Diego Public Defender's Office. You guys are creative, hardworking, and occasionally you win. Much of that was meant to be a compliment in this argument. Well, it's meant to be. This is not sarcastic. This is meant to be actually a compliment, even if you lose this case. Well, thank you, Your Honor. Maybe to speak, I think your gut reaction is it seems like you said it may be a bit silly. I think the problem is we all agree here that both Mr. Aldana and Mr. Suarez committed a crime. Like, there's no question that what they did was illegal. The question is, which of these two very technical immigration offenses did they commit? My parting point, I think, is that the government wants to read each of these specific areas. So, for instance, Otay Mesa, California as saying the Otay Mesa, California port of entry. The only thing I'll say is that that's just inconsistent with what they wrote. Not only because that's not what they wrote, but because of things like Calexico, California. There are two ports of entry in a number of these listings, including Calexico. So, if the government is correct, it wouldn't make sense of the Calexico, California entry because there's multiple. There's multiple ports there. The court has no further questions. I know it's been a long week for you, so. Well, no. Nolan, we saw you earlier in the week. Glad to see you again. Thank you, Your Honor. I thank both of you for your arguments. Thank you. Let me get the names so I can read it properly. United States v. Aldana and Suarez submitted for decision.
judges: W. Fletcher, Ikuta, Barker